# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **TIMOTHY LOCKE,** *Plaintiff*, v. **CLARITY SERVICES, INC.,** *Defendant*. | Case Number: **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Timothy Locke** ("**Mr. Locke**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Locke against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Clarity is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by Clarity within Polk County, Florida, which is in the Middle District of Florida.

## PARTIES

### Mr. Locke

5. **Mr. Locke** is a natural person residing in the City of Lakeland, Polk County, Florida.

6. Mr. Locke is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. **Clarity** is a Delaware corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9. Clarity is a nationwide *Consumer Reporting Agency* ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of

preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Produces Clearly Erroneous Report on Plaintiff

10. Around January 2019, Clarity began maintaining a credit file on Mr. Locke. *See* **PLAINTIFF'S EXHIBIT A.**

11. At various dates thereafter, Clarity incorporated credit information belonging to two separate unrelated consumers into Mr. Locke's credit file.

12. Around October 2019, Clarity falsely associated information apparently belonging to Michael Lindsey into its credit file regarding Mr. Locke. *Id.*

13. Around June 2021, Clarity also falsely associated information apparently belonging to Antoinette Locke into its credit file regarding Mr. Locke. *Id*.

14. Thereafter, Clarity's credit file on Mr. Locke stated his name was Timothy Locke, and that he was also known as Antoinette Locke and Michael Lindsey. *Id.*

15. Mr. Locke has never used nor applied for credit using the name "Michael Lindsey" or "Antoinette Locke."

16. On information and belief, Clarity's file on Mr. Locke is an example of a *mixed file*.

17. A *mixed file* is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

18. On information and belief, the *mixed file* resulted from Clarity's reckless and improper methods by which it connects data reported to it by various furnishers and incorporates that data into its files.

19. In an aggressive attempt to match every record reported, Clarity's automated system often erroneously match information to a consumer's credit file with minimal commonalities.

20. Indeed, on information and belief, Clarity often matches data with the information in its files based on a single data point, such as the same year of birth, instead of utilizing all of the information provided to it.

21. These erroneous matches occur even when the data from Clarity's furnishers of information contains substantially different identifying information from that of the actual consumer.

22. Clarity knows that its automated systems erroneously match tradeline information to incorrect consumers' credit files with minimal commonalities.

23. Despite such knowledge, Clarity has declined to correct its systems.

**Clarity's File on Plaintiff Includes Additional Inaccuracies**

24. In addition to the information highlighted above, Clarity's credit file on Mr. Locke contains an email address of MLindsey@XXXXXXXX.com[1], which does not belong to Mr. Locke and almost certainly belongs to Michael Lindsey. ***Id.***

25. Clarity also included in its report that Mr. Locke has Kentucky and California driver's licenses, that he lives in Bellevue, Kentucky, that he has a cell phone number with a Kentucky (859) area code, that he has been at his current job for 12 months (as well as 24 months and 76 months – three different, wildly-disparate lengths of employment were all reported within 60 seconds of each other and all of which are presented by Clarity as factually correct), and that he has a bank account in Cincinnati – all information which does not belong to Mr. Locke.

26. Clarity, as a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1681e(b).

27. Despite its obligation, Clarity has sold forty-one (41) consumer reports to Mr. Locke's creditors since it first "mixed" Plaintiff's file. ***Id.***

28. On information and belief, each of these consumer reports contained the information belonging to Michael Lindsey and/or Antoinette Locke identified herein.

---

[1] The full, unredacted email address is included in Clarity's file on Mr. Locke, but is redacted here for privacy purposes.

29. On information and belief, Clarity also sold reports to potential creditors of Michael Lindsey and/or Antoinette Locke that included Mr. Locke's personal and highly private information.

30. Upon learning that Clarity now believes he is also known by an unrelated stranger's name, which is clearly not his, Mr. Locke became very concerned, as Clarity's reports concerning him contain egregiously wrong information.

31. One of the products Clarity sells to lenders is called *Clear Digital Identity*™, which it describes as a service that "cross-references application information, phone and email details, and exclusive Clarity data to authenticate consumer identities and detect application fraud . . . . Comparing a consumer's personal information against phone, email and Clarity data helps to validate the legitimacy of an applicant's information and gives lenders a much greater assurance that applicants are who they claim to be. A failure to authenticate some of the data points can indicate fraud." *See* Clarity Services, Inc., https://www.clarityservices.com/solutions/fraud/clear-digital-identity/ (last visited December 4, 2023).

32. Upon information and belief, the presence of the name "Michael Lindsey" and "Antoinette Locke" combined with those individuals' personal information being incorporated into Mr. Locke's file, resulted in Mr. Locke's credit applications being falsely flagged as potentially fraudulent.

33. Mr. Locke's Clarity Credit Score was 890 as of February 1, 2024, with the range of possible scores being 516 to 951. *See* **PLAINTIFF'S EXHIBIT B.**

34. An adverse factor listed by Clarity for Mr. Locke's score was the number of changes in application information. *Id.*

35. Thus, the fact that Clarity's scoring algorithms saw too many changes to application information – *e.g.*, different names, dates of birth, contact information, etc. – lowered his Clarity Credit Score.

36. As a result of Clarity's erroneous association of information unrelated to Mr. Locke in his consumer report, his credit score has been negatively impacted.

37. As evidenced by the glaring errors in its reports, Clarity failed to use reasonable procedures in producing the consumer reports regarding Mr. Locke which it sold to many creditors, and potential creditors, as any reasonable procedure would have determined that information about an unrelated individual was mixed with Mr. Locke's data.

38. Clarity could reasonably foresee that selling reports which contained data belonging to an unrelated individual would cause significant harm to Mr. Locke.

39. Similarly, Clarity could reasonably foresee that producing credit reports which contain information about another person – especially a person so obviously not the subject of the credit report – would likely cause harm to the

consumer for whom the report was created and for others (*e.g.*, Michael Lindsey and Antoinette Locke) whose information was thereby improperly disclosed.

40. In December 2023, Mr. Locke requested a consumer credit disclosure from Clarity.

41. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Locke's request, Clarity was required to "clearly and accurately" disclose *all* information in Mr. Locke's file at the time of his request, as well as the *sources of information relied upon*.

42. A request for a consumer disclosure inherently includes a request for the sources of information relied upon. See *Brauer v. ExamOne World Wide Inc.*, No. 222CV07760MEMFJC, 2023 WL 4695899 (C.D. Cal. July 19, 2023) (stating "… these sources clearly fall within the plain language definition of 'file,' and should have been provided to Brauer when he requested his file.")

43. As a CRA, Clarity knows that the FCRA requires it to disclose the sources of information relied upon in compiling the consumer's credit report when providing a consumer disclosure. *Id*.

44. However, when providing Mr. Locke with his disclosure, Clarity failed to disclose the source(s) of information upon which it relied to determine Mr. Locke was known as Michael Lindsey and/or Antoinette Locke.

45. Clarity similarly failed to disclose the source(s) of information upon which it relied to determine that Mr. Locke had multiple dates of birth.

46. A consumer disclosure which claims a consumer is also known as a different consumer with a completely different name and date of birth – without explanation as to how or why this information was determined – is, on its face, neither clear, accurate, nor complete.

47. Clarity specifically chose which information to disclose in its consumer report, and therefore acted willfully in preparing a deficient report. In the alternative, Clarity has acted with gross recklessness and a complete disregard for the rights of consumers to have accurate and complete reports generated about them and to receive such reports.

48. On or about October 18, 2019, Zocaloans, an online, short-term "payday" lender, requested a report about Michael Lindsey.

49. Zocaloans clearly stated whom it was asking for a report on, providing Michael Lindsey's name, date of birth, and Social Security number.

50. In response, Clarity supplied Zocaloans with a report with Mr. Locke's personal and private information.

51. On that same date, within minutes, Clarity also sold a report to American Web Loan and two reports to National Small Loan.

52. Zocaloans, American Web Loan, and National Small Loan are all online "payday" lenders which make loans at interest rates typically exceeding 500% annually and operate on legally-dubious "rent-a-tribe" lending models, in

which non-Indian lenders partner with small Indian tribes to make usurious loans to consumers, ostensibly under the Indian tribe's own lending ordinances.

53. Clarity had no reasonable basis to believe Zocaloans, American Web Loan, and National Small Loan had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to these lenders existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

54. As a result of Clarity's conduct, Mr. Locke has suffered damage to his Clarity credit scores, damage to his reputation, and loss of credit.

55. Clarity frequently sells reports about consumers to online lenders who requested reports on unrelated individuals and has been sued many times in the past for these actions. See, e.g., *Alexander Gil vs. Clarity Services, Inc.*, case 8:23-cv-00845, M.D. Fla., April 18, 2023 (sale of report of a Florida consumer to online lender requesting report of unrelated Nevada resident); *Donna Ford vs. Clarity Services, Inc.*, case number 4:22-cv-00301-MW-MAF, N.D. Fla., July 2022 (sale of report of a Florida consumer to online lender requesting report of unrelated male Oregon resident as well as an unrelated male Florida resident).

56. Mr. Locke has also suffered severe emotional distress and has spent time and money to correct his file and force Clarity to comply with its statutory obligations, and in procuring counsel.

57. Mr. Locke has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to the firm.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

58. Mr. Locke adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

59. Clarity willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Locke, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning another individual into Mr. Locke's reports, or the inclusion of other false information, including a false date of birth.

60. Clarity's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

61. Clarity's policies could reasonably be foreseen to cause harm to Mr. Locke.

62. Clarity is thus liable to Mr. Locke, pursuant to 15 U.S.C. § 1681n, for statutory damages of up to $1,000 for each occurrence, Mr. Locke's actual damages, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Locke respectfully requests this Honorable Court enter judgment in his favor, and against Clarity, for:

a. The greater of Mr. Locke's actual damages and statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
## Pled In The Alternative To Count I

63. Mr. Locke adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

64. Clarity negligently violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Locke, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning another individual into Mr. Locke's reports, or the inclusion of other false information, including a false date of birth.

65. Clarity's policies and actions could reasonably be foreseen to cause harm to Mr. Locke, and did cause harm to Mr. Locke.

66. Clarity is thus liable to Mr. Locke, pursuant to 15 U.S.C. § 1681o, for Mr. Locke's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Mr. Locke respectfully requests this Honorable Court enter judgment in his favor, and against Clarity, for:

 a. Mr. Locke's actual pursuant to 15 U.S.C. § 1681o(a)(1);

 b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

 c. Such other relief that this Court deems just and proper.

### COUNT III
### WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(2)

67. Mr. Locke adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

68. Clarity willfully violated **15 U.S.C. § 1681g(a)(2)** when responding to Mr. Locke's request for his consumer disclosure by failing to clearly and accurately disclose to Mr. Locke the source(s) of information relied upon concerning information in his credit file.

69. Clarity did not disclose the source(s) of the aforementioned false information contained in Mr. Locke's credit file.

70. Clarity knowingly failed to disclose the source(s) of the information despite having such knowledge.

71. Clarity knows, through complaints from other consumers, that it does not provide the source of information as required by the FCRA, yet has declined to correct such omission in its reports.

72. Clarity is thus liable to Mr. Locke, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Locke's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Locke respectfully requests this Honorable Court enter judgment in his favor, and against Clarity, for:

a. The greater of Mr. Locke's actual damages and statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief that this Court deems just and proper

### COUNT IV
### WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

73. Mr. Locke adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

74. Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least four reports to Zocaloans, American Web Loan, and National Small Loan, about

Plaintiff in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

75. Clarity had no reason to believe it had permissible purpose to furnish this report as there are essentially no commonalities between the consumer whom Zocaloans, American Web Loan, and National Small Loan requested reports on and Plaintiff.

76. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

77. Clarity is thus liable to Mr. Locke, pursuant to 15 U.S.C. § 1681n, for Mr. Locke's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Locke respectfully requests this Honorable Court enter judgment in his favor, and against Clarity, for:

a. The greater of Mr. Locke's actual damages and statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief that this Court deems just and proper

## COUNT V
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### Pled In the Alternative to Count IV

78. Mr. Locke adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

79. Clarity negligently violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least four reports to Zocaloans, American Web Loan, and National Small Loan, about Plaintiff in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

80. Clarity had no reason to believe it had permissible purpose to furnish this report as there are essentially no commonalities between the consumer whom Zocaloans, American Web Loan, and National Small Loan requested reports on and Plaintiff.

81. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

82. Clarity is thus liable to Mr. Locke, pursuant to 15 U.S.C. § 1681o, for Mr. Locke's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Mr. Locke respectfully requests this Honorable Court enter judgment in his favor, and against Clarity, for:

a. Mr. Locke's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §

      1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper

## JURY TRIAL DEMANDED

Mr. Locke hereby demands a trial by jury on all issues so triable.

Respectfully submitted on February 1, 2024, by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 305)
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A    Clarity's Consumer Disclosure for Mr. Locke, December 29, 2023 – Excerpt
B    Clarity's Credit Score for Mr. Locke, February 1, 2024 – Excerpt